UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| VICTOR PATINO,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>　　　　　　Defendants. | Case No. 2:15-cv-00009-RFB-PAL<br><br>**OPINION & ORDER**<br><br>Defendants' Motion for Summary Judgment (Dkt. No. 18) and Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 21) |

## I.   INTRODUCTION

Before the Court are Defendants' Motion for Summary Judgment (Dkt. No. 18) and Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 21). For the reasons elaborated below, Defendants' Motion for Summary Judgment is granted, and Plaintiff's Motion for Partial Summary Judgment is denied.

## II.   BACKGROUND

Victor Patino filed a Complaint against Sergeant Wilson, Sheriff Gillespie, and the Las Vegas Metropolitan Police Department ("LVMPD") on January 3, 2015. (Dkt. No. 1). The complaint brought four causes of action: a claim against Sergeant Wilson alleging violation of Patino's Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983; a <u>Monell</u> claim against the LVMPD and Sheriff Douglas Gillespie, under 42 U.S.C. § 1983; state law negligence claims; and intentional infliction of emotional distress claims.

Defendants filed a Motion for Summary Judgment on February 18, 2016. (Dkt. No. 18).

Patino filed his Response on March 18, 2016, (Dkt. No. 26), and Defendants filed a Reply on April 5, 2016 (Dkt. No. 29). Patino filed a Motion for Partial Summary Judgment on February 26, 2016. (Dkt. No. 21). Defendants filed a Response on March 18, 2016, (Dkt. No. 25) and Plaintiff filed a Reply on April 11, 2016 (Dkt. No. 30).

Plaintiff's Motion for Partial Summary Judgment is raised as to three issues also raised in Defendant's Motion for Summary Judgment: Defendant Wilson's entry into Patino's backyard, Defendant Wilson's seizure of Patino's dog, Bubba, and Defendant Wilson's entitlement to qualified immunity. The same arguments are raised both in Plaintiff's Motion for Partial Summary Judgment and in his Response to Defendant's Motion for Summary Judgment. Therefore, the Court addresses both Motions jointly.

### A. Undisputed and Disputed Facts

The Court incorporates its discussion of the undisputed and disputed facts from its hearing on September 2, 2016. The Court discusses and elaborates these facts here.

#### a. Undisputed Facts

The Court finds the following facts to be undisputed. On January 6, 2013, Sergeant Wilson responded to a call on 211 Earl Street, located directly behind 16th Street, where Patino resides. The reporting caller told LVMPD dispatch that an ex-boyfriend was lying in her front yard refusing to leave. Sergeant Wilson responded alone to the Earl Street call just before 2 pm. Upon arrival at the location, he did not find anyone matching the description of the suspect. He exited his marked LVMPD vehicle and began walking the property in hopes of locating the suspect or the person reporting.

Sergeant Wilson called dispatch to verify the address. (Defs.' Ex. 6, "LVMPD Radio DTAC"). About 15 seconds later, Sgt. Wilson informed dispatch that he heard what he thought to be a gunshot "right across the street from me." (Defs.' Ex. 6). Wilson walked across the street to the other side of Earl Street. Fearing someone may be hurt or in danger, he attempted to look into the backyards of the houses on Earl Street. As he was investigating, he heard a sound he believed to be moaning or a muffled yell. Wilson updated dispatch with this new development and informed

them that the sound was coming from a brown house on 16th Street. (Defs. Ex. 6). He informed dispatch that the exact address was 147 S. 16th St. Around this time, a citizen called LVMPD dispatch and reported hearing what sounded like fireworks being lit off in the area. Wilson acknowledged this report. At that point, he drove his vehicle around the street, parked on 16th Street, and called for backup.

The 147 S. 16th Street property has two separate living structures – the main house and a "Casita", a small residence in the back. There is a pathway from the front yard back to the Casita, and it is not uncommon for visitors to walk directly back to the Casita and bypass the main residence. The property has a fence that encloses the backyard and the Casita. After arriving at 147 S. 16th St., Wilson was met by Officer Joseph Hemphill, Officer Zachary Baughman, and Officer Mark LaFavor. Wilson and Hemphill decided to check the backyard of the property to ensure that no one was injured or otherwise in danger. According to LVMPD policy, officers can search a residence, without a warrant, when exigent circumstances or an emergency exists. (Defs. Ex. 8). Wilson and Hemphill entered the yard to ensure that no one was injured or in danger based upon Wilson's good faith belief that he had heard a gunshort and a moaning sound.

Wilson and Hemphill walked to the gate enclosing the backyard and looked into the backyard. They could see portions of the backyard as well as the Casita. They did not see anyone from their vantage point, but decided to search the backyard and approach the Casita to make sure no one was injured. Wilson took the lead and entered the backyard, followed by Hemphill. Wilson entered the backyard and headed towards the Casita. As he walked into the backyard, Bubba, Patino's pit bull, came into Wilson's view. Wilson warned Hemphill, "Dog," and began to back up. When he began to back up, Bubba turned towards Wilson with his ears back. Bubba began running at Wilson at a full sprint. A second pit bull was in the yard and also began approaching Wilson. Wilson and Hemphill began backing up quickly. Wilson attempted to get the pit bull to stop by yelling "Stop! Stop!".

When Bubba was within two feet of Wilson, Wilson fired his service weapon at Bubba. Hemphill also perceived Bubba as a serious threat and was preparing to use his shotgun to shoot the dog. Wilson called the incident into dispatch and requested animal control. Wilson began

looking for the second pit bull, but it had disappeared.

Patino did not witness any of these events, and was sleeping at the main residence and was woken up by his mother, who heard the shots. Patino exited and saw five or six officers in the backyard. He realized his pit bull had been shot, and he began questioning the officers. Subsequently, Patino participated in the LVMPD investigation of what had occurred.

### a. Disputed Facts

According to Patino, the fence surrounding his property had a "Beware of Dog" sign affixed to it. Wilson does not recall having seen such a sign, and none of the attendant Officers from the date of the incident recall having seen the sign. During discovery, Defendants asked Patino to produce a photograph of the sign, but Patino responded that "upon information and belief Defendant officers took down the Beware of Dog sign" and denied having it in his possession. He has produced no other evidence or deposition testimony regarding the sign.

Patino also alleges that the LVMPD had previously been to the Patino residence and was on notice about his dogs. None of the officers on the scene on the date of the incident had previously been to Patino's residence. Patino has not made out any connection between the officers who had allegedly been there once or twice prior, and any of the other officers on the scene the day Bubba was shot.

### III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). A genuine issue exists, precluding summary judgment, so long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## IV. ANALYSIS
### A. Section 1983 Claim Against Officer Wilson for Entry Into Backyard and Shooting of Dog

To make out a prima facie case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1989). In cases involving the shooting of a dog, the claim is one for unlawful seizure of property under the Fourth Amendment because "the Fourth Amendment protections of 'persons' does not extend to dogs." Sandoval v. Las Vegas Metro Police Dep't, 756 F.3d 1154, 1167 n. 10 (9th Cir. 2014). Therefore, the issue for the Court is whether Wilson unlawfully seized Patino's property in violation of the Fourth Amendment when he shot and killed Bubba. The Court also addresses whether Wilson's entry into the backyard was reasonable.

Defendants argue that Plaintiff has not raised a Fourth Amendment claim regarding Wilson's illegal entry into his backyard, and that therefore this issue need not be addressed. Although Plaintiff did not clearly state, in the relevant count of his Complaint, that the Fourth Amendment claim applies to the warrantless entry into Patino's backyard, the Complaint does allege as part of that claim that Wilson entered the yard without permission. Although Defendants argue the claim was not properly raised, they nevertheless addressed the reasonableness of the entry in their briefing and oral arguments. Construing Patino's Complaint liberally to include a Fourth Amendment claim for both warrantless entry into the yard and shooting of the dog, the Court analyzes both grounds.

Here, Wilson's entry into the backyard was reasonable under the circumstances because he had reasonable grounds to believe there was an emergency occurring, involving a potentially injured person in need of immediate assistance. Searches and seizures without a warrant are

"presumptively unreasonable." Payton v. New York, 445 U.S. 573, 590 (1980). A set of exceptions exist to this warrant requirement, including the "emergency" doctrine. The emergency exception applies where police officers are responding in their "community care taking function" to what they reasonably perceive as an emergency involving a threat to life or property. U.S. v. Stafford, 416 F.3d 1068, 1073 (9th Cir. 2005). In order to justify a warrantless search under the emergency doctrine: (1) the police must have reasonable grounds to believe that there is an emergency and an immediate need for the assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. See id. Plaintiff did not address the emergency exception to the warrant requirement, but rather focused his argument on the "exigency" exception, which applies to evidentiary or investigatory searches and is not the relevant exception in this case.

In this case, the undisputed facts show that Wilson had reasonable grounds to believe there was an emergency. He heard what sounded like gunshots coming from the direction of Patino's home. He also heard what he perceived to be an injured person making a distressed sound from Patino's backyard or the Casita. He relayed all of these perceptions over his radio to dispatch. Wilson did not have any investigatory or evidence-seeking motivation when he entered Patino's backyard. He entered it with the intention of approaching the Casita in the backyard to make sure that nobody was in immediate danger. Therefore, Wilson had an objectively reasonable basis for believing there was an emergency and for associating the emergency with Patino's house, and his entry into Patino's backyard did not constitute an unreasonable entry or search. Even if other, reasonable methods of investigating the sounds, like knocking on the front door, existed, that does not make Wilson's backyard entry objectively unreasonable, especially in light of Patino's concession that individuals often approached the Casita directly through the pathway to the backyard.

Furthermore, Wilson's decision to shoot the pit bull was reasonable based on the undisputed factual record. The shooting of a dog must be reasonable under the totality of the circumstances. San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d

962, 975 (9th Cir. 2005). "The Fourth Amendment protections of 'persons' does not extend to dogs." Id. To determine whether the shooting of a dog was reasonable, the court must balance the nature and quality of the intrusion on Plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake. *See* Graham v. Connor, 490 U.S. 386, 396 (1989). Here, Sergeant Wilson's conduct was objectively reasonable under the totality of the circumstances. He entered the backyard with the intention of responding to a perceived emergency. In what he and his fellow officer estimated to be about five seconds, the pit bull began running towards him aggressively across the backyard. Hemphill, Wilson's back-up officer, also perceived the pit bull to be a serious threat and had his shotgun ready to fire as well. Wilson yelled for the dog to stop, and when the dog was within two feet of him, he reacted to protect himself by shooting the dog. Officers are not required to avail themselves of the least intrusive means when responding to an exigent or emergency situation. Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). The Court finds that had Wilson refrained from shooting and instead defended himself against the dog by other means while being attacked in close range, he would have faced a considerable risk of serious injury. Therefore, under the totality of the circumstances, on the undisputed facts, Wilson's decision to shoot the pit bull was reasonable.

Plaintiff argues that the alleged "Beware of Dog" sign gave Wilson forewarning of the dogs' presence and made his actions unreasonable. Aside from Plaintiff's bare allegation, he has provided no evidentiary support for the fact that such a sign existed. Bare allegations are insufficient to create a genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Even crediting Patino's allegation that a "Beware of Dog" sign existed, regardless of the sign's presence, if Wilson was responding to the perception of a shot having been fired and a potential victim in time-sensitive distress, it would have been reasonable for him to enter the backyard. As Wilson indicated, had he read such a sign, he would have entered the yard regardless, because of the possibility of a distressed individual needing assistance. The Court agrees that this would also have been reasonable. Plaintiff cites to the Hells Angels Ninth Circuit case as establishing that, when an officer has any advance notice of the presence of a dog, he or she must take precautionary measures to try and preserve the dog's life. 402 F.3d 962 (9th Cir. 2005).

1  However, the Court does not read Hells Angels to stand for such a proposition. In that case, the
2  officers knew of the plaintiffs' dogs a week prior to executing search warrants, and had time to
3  develop strategies for immobilizing the dogs non-lethally, but failed to do so. The Ninth Circuit
4  explicitly made note in its holding that "this case is not the kind where the officer was reacting to
5  a sudden unexpected situation, where the officers were confronted with exigent circumstances.
6  The Fourth Amendment allows officers to use a certain amount of force because they are often
7  forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly
8  evolving…". Id. at 978 (internal citations omitted). In the present case, Wilson was in precisely
9  the situation Hells Angels describes as being distinct from the circumstances of a search warrant's
10 execution. He believed himself to be responding to an emergency shooting with a potentially
11 injured victim.

12 Although the Court need not reach this issue, the Court also finds that, to the extent there
13 was a constitutional violation, Wilson would be entitled to qualified immunity. "[T]he doctrine of
14 qualified immunity protects government officials from liability for civil damages insofar as their
15 conduct does not violate clearly established statutory or constitutional rights of which a reasonable
16 person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity
17 shields an officer from liability even if his or her action resulted from "mistake of law, a mistake
18 of fact, or a mistake based on mixed questions of law and fact." Id. To determine whether an officer
19 is entitled to qualified immunity, a two-step test is employed: first, the court decides whether the
20 officer violated a plaintiff's constitutional right; then the court proceeds to determine whether the
21 constitutional right was clearly established in light of the specific context of the case. The law
22 allows the district court to "exercise [its] sound discretion in deciding which of the two prongs of
23 the qualified immunity analysis should be addressed first." Matteo v. Agarano, 661 F.3d 433, 440
24 (9th Cir. 2011). As the Court has analyzed above, Wilson did not commit a constitutional violation
25 in this case. Furthermore, under this Court's analysis of the Hell's Angels case, that case does not
26 address the specific context of emergency exceptions to the Fourth Amendment. Thus, even if
27 there was a constitutional violation, there was and is no clearly established right to an officer
28 having to choose the least intrusive plan of entry or coming up with a method of subduing a dog,

when responding to an *emergency* situation, even if a sign were to put the officer on notice of the dog's potential presence.

Therefore, the Court grants summary judgment in favor of Defendant Wilson as to Patino's Fourth and Fourteenth Amendment claims against him. The Court also holds, in the alternative, that qualified immunity shields Wilson from liability in this case. His entry into the property was reasonable and falls into the emergency exception for warrantless searches. At most, he made a "reasonable mistake" in entering the backyard when there was no actual emergency, and is protected by qualified immunity. His shooting of Bubba was a reasonable, split-second reaction amidst emergency circumstances.

### B.  Section 1983, *Monell* Claim Against LVMPD and Sheriff Gillespie

"A suit against a governmental official in his official capacity is equivalent to a suit against the governmental entity itself." Larez v. Los Angeles, 946 F.2d 630, 645 (9th Cir. 1991). Therefore, the official capacity claims against Sheriff Gillespie under § 1983 will be analyzed together with Patino's claims against the LVMPD. Under Monell, when a municipal policy of some nature is the "driving force" behind an unconstitutional action taken by municipal employees, the municipality will be liable. Monell v. Dep't of Social Services, 436 U.S. 658 (1978). Liability exists where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental "custom". Id. Plaintiffs can recover under three different theories: "commission", a local government implementing its official policies or established customs, such as inadequate training of governmental officials; "omission", the government's omission to an official policy, such as a failure to train; or "ratification", a policymaker's purposeful approval of an employee's unconstitutional conduct. Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010).

As previously analyzed, the Court finds no constitutional violation against Patino on the basis of Wilson's conduct on the date of the incident. His entry into the backyard in response to a perceived emergency and injury that was thought to be located at Patino's residence was

reasonable, and his shooting of the pit bull who was running towards him and was two feet away from him was also reasonable. Therefore, there was no unconstitutional action to undergird a Monell claim.

Furthermore, Patino has not generated any evidence of an unconstitutional policy or custom, or a lack of training or supervision. Just because, as Patino states, the dog shooting was found to be "within policy", that does not mean LVMPD's policy, which states that the use of a firearm in self-defense is permitted to "prevent serious harm to the officer or others…" is unconstitutional. Additionally, Patino has provided no evidence of "deliberate indifference" to training or supervision of officers. Deliberate indifference is shown when the need for "training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989).

At the hearing on this motion, Patino argued that the LVMPD's investigatory determination that there was no wrongdoing on Wilson's part constituted evidence of ratification. Patino's brief cites to his expert report, stating that Sheriff Gillespie personally ratified Wilson's killing of Bubba because Wilson was not punished for misconduct. To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it. Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). The policymaker must have knowledge of the constitutional violation and actually approve of it. Id. "[M]ere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." Id. Here, because Wilson's conduct was not unconstitutional, Plaintiff's arguments about ratification are inapposite. The LVMPD's findings that Wilson's action were in keeping with applicable policies and procedures, which are themselves consistent with the requirements of the Fourth Amendment, do not amount to a ratification of an unconstitutional practice.

Therefore, the Court grants summary judgment in favor of Defendants as to Patino's Monell claims against the LVMPD and Sheriff Gillespie.

### C. State Law Negligence and IIED Claims
#### a. Negligence Claim

To prove a claim for negligence, the plaintiff must demonstrate that he was owed a duty of care; that defendant breached that duty; that the breach was the legal cause of Patino's injury; and that Patino suffered damages. Scialabba v. Brandise Const. Co., 112 Nev. 965, 968 (1996). The Court incorporates by reference here its discussion of the reasonableness of the officers' actions. There is therefore no basis for concluding that the officers breached any duty owed to Patino. Wilson's entry into the property was objectively reasonable and falls into the emergency exception for warrantless searches. Therefore, the Court grants summary judgment in favor of Defendants as to the state law negligence claim against Wilson.

### b. Intentional Infliction of Emotional Distress (IIED)

In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation. Posada v. City of Reno, 851 P.2d 438, 444 (Nev. 1993).

Defendants have cited to Nev. Rev. Stat. 41.740, which is Nevada's statutory scheme for recovery for the death of a pet. The statute allows for the reimbursement of certain expenses, but prohibits the award of punitive and noneconomic damages for the death of a pet. N.R.S. 41.740(2). Plaintiff has not cited to any case law that would create an exception in this case, and allow him to recover for emotional distress due to the death of his pet. The Court therefore grants summary judgment in favor of Defendants as to Patino's IIED claims, which are preempted by N.R.S. 41.740's statutory recovery scheme.

Additionally, the Court finds, as discussed above, that the undisputed facts demonstrate that the officers did not engage in extreme or outrageous conduct. Plaintiff therefore cannot establish a prima facie case for intentional infliction of emotional distress.

. . .

. . .

. . .

. . .

### V. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment is GRANTED as to all of Plaintiff's claims. Plaintiff's Motion for Partial Summary Judgment is DENIED.

DATED this 13th day of September, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**